UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KARLY M. MICHAELS,

        **Plaintiff,**

v.                                            **Case No: 6:21-cv-2-DCI**

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

---

## MEMORANDUM AND OPINION

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying an application for child's insurance benefits. The Administrative Law Judge (ALJ) issued an unfavorable decision and the Appeals Council denied Claimant's request for review. The parties submitted a Joint Memorandum (Doc. 30), and the Court conducted a hearing on an issue raised *sua sponte* which is the basis for this opinion.

Having considered the parties' memorandum, oral argument, and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **REVERSED** and **REMANDED**.

### I.      Disabled Adult Child Insurance Benefits

The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505. To qualify for child insurance benefits as a disabled adult, several criteria must be met. 20 C.F.R. §

404.350(a)(1)-(5).  Relevant here, if the claimant is over 18, the claimant must be unmarried and "have a disability that began before [she] became 22 years old." *Id.* § 404.350(a)(4), (5). "To make a final determination as to whether an adult-child claimant is or is not disabled, the Commissioner employs the same five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520 that is applicable to adults."

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Claimant filed the claim after March 27, 2017, so the revised regulations apply in this action.

The revised regulations require that an ALJ apply the same factors in the consideration of the opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions.   20 C.F.R. §§ 404.1520c(a); 416.920c(a).   The ALJ will assess the persuasiveness of a medical source's opinion in light of five factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[1] 4) specialization and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(c); 416.920c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).   In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-

---

[1] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).   The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.   We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).

Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019)).   "Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

## II.   Procedural History

In the March 23, 2020 unfavorable decision, the ALJ found that Claimant has not been under a disability from January 1, 2000, through the date of the decision.   Docs. 1, 30.   Plaintiff's appeal ensued, and, in the Joint Memorandum, the parties state that Claimant was born in August of 1999 and was 4 months old on the alleged onset date, *but* she amended the onset date to August 30, 2017—her 18th birthday.   Doc. 30 at 2-3.   With respect to the amendment, the parties refer the

Court to a letter Claimant's counsel sent to the ALJ regarding the upcoming hearing. *Id*., citing to R. 337.  In the letter dated March 2, 2020, counsel states in the procedural history section that "Claimant amended onset date to 8/30/17—her 18th birthday."  R. 337.

While the letter is dated before the hearing and the decision, the ALJ states several times in the decision that the alleged onset date is January 1, 2000 (R. 15, 17, 29) and does not mention the amended alleged onset date.  The Court reviewed the transcript of the March 10, 2020 hearing and it did not appear that the ALJ, Claimant, or counsel discussed the onset date, amended or otherwise. *See* R. 36-63.

Given the parties' representation in the Joint Memorandum regarding the amended onset date, the Court conducted a hearing to clarify the issue.[2]  Doc. 33.  The case is ripe for review.

### III.    Discussion

While Claimant argues for relief on other grounds in the Joint Memorandum, the Court finds a remand is warranted because of the ALJ's failure to apply the correct onset date in the decision.  During the hearing, the parties agreed that the ALJ erred in failing to consider the amended alleged onset date of August 30, 2017, and the ALJ instead based the decision on the original January 1, 2000 onset date.  Even so, the Commissioner argued that the error was harmless.[3]  Namely, the Commissioner contended that the central question is whether the Claimant proved she was disabled prior to age 22, and since January 1, 2000 and August 29, 2017 are both

---

[2] The Court stated in the Order setting the hearing that it had not yet concluded that any inconsistency impacts Claimant's argument, but since it appeared that the ALJ considered record evidence which predates August 30, 2017, a discussion on the relevancy of the amendment and the ALJ's use of the January 2000 date was necessary to assist the Court in its analysis.  The Joint Memorandum does not address the ALJ's error, so the Court gave the parties an opportunity to address this issue at the hearing, which they did.

[3] At the hearing, Claimant, through counsel, appeared not to oppose that position.

before that date it does not matter which date was selected.  Further, the Commissioner explained that even though the evidence from January 1, 2000 to August 29, 2017 predates the amended onset date—August 30, 2017—that does not mean the record from that period is irrelevant.  The Commissioner asserts that the ALJ has a responsibility to review the entire record and sometimes evidence that predates the onset date can speak to the Claimant's condition after the start of the alleged disability.  Accordingly, the ALJ's use of the wrong onset date was not harmful.

The Commissioner's point is well-taken, in part, because the regulations in general require the ALJ to "consider all of the supporting evidence underlying the other governmental agency['s]. . .decision that [the ALJ] receive[s] as evidence in [a plaintiff's] claim."  20 C.F.R. § 404.1504; *see also Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020) (affirming new regulations no longer require analysis of agency determinations but supporting evidence must be considered.).  And the Commissioner is correct that evidence that predates an onset date is not *per se* irrelevant to the disability analysis and should be considered.  Since both onset dates cover the relevant period—age 18 to 22—Commissioner's argument seems convincing at first blush.

However, the Commissioner's position ignores an entire body of law relating to how record evidence that predates an alleged disability onset date should be evaluated and how that evaluation can impact the sequential analysis.  In general,"[m]edical opinions that predate the alleged onset of disability are of limited relevance."  *Viera v. Comm'r of Soc. Sec.*, 2018 WL 5095511, at \*3 (M.D. Fla. Oct. 19, 2018) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)).  But "[c]ourts within the Eleventh Circuit have found pre-onset date evidence to be significant so long as such evidence is: 1) within close proximity to the onset date; and 2) relevant to a claimant's impairments."  *Garrett v. Comm'r of Soc. Sec.*, 2017 WL 1460733, at \*3 (M.D. Fla. Mar. 15, 2017) *report and recommendation adopted*, 2017 WL 1438321 (Apr. 24,

2017); *see also Clowers v. Colvin*, 2015 WL 3554664, at *8 (N.D. Ala. Jun. 5, 2015) (finding that a consultative examination taken seven months before a claimant's onset date "had some relevance, albeit not complete relevance, to the time period at issue…"); *Hamlin v. Astrue*, 2008 WL 4371326, at *4 (M.D. Fla. Sept. 19, 2008) (finding that "the Commissioner's own requirement that ALJs consider all the evidence in the record" obligated the ALJ to consider relevant evidence predating a claimant's alleged onset date).

Here, because of the error, the ALJ considered evidence that predates the correct alleged onset date.  But in doing so, the ALJ discussed neither proximity nor relevancy and failed to mention the amendment of the alleged onset date, let alone make any distinction between the pre- and post-onset-date evidence.  The Court finds this to be problematic because Claimant's challenge to the decision, at least in part, relates to the ALJ's analysis of that pre-onset date evidence.

Specifically, Claimant argues that the ALJ failed to properly weigh the medical opinions based on an adequate rationale and substantial evidence because the RFC conflicts with the opinion of Dr. Sarah Arnett, a treating psychologist.  Doc. 30 at 15.  Claimant asserts that the ALJ failed to evaluate the relevancy of the medical evidence and instead found that Dr. Arnett's opinions are inconsistent with evidence from other medical and non-medical sources and are not "persuasive." Doc. 30 at 16, 18. Claimant challenges the inconsistency finding and asserts that it does not follow the current Eleventh Circuit law.  R. 24.

Claimant refers the Court to the following excerpt from the ALJ's decision relating to Dr. Arnett's opinion:

> In January 2018, Sarah Arnett, Psy.D., submitted a statement where she explained she had treated the claimant for her mental health since October 2016 to reduce her symptoms as well as improve her ability to function and complete her activities of daily living. She opined the claimant was incapable of independently living due to the severity of her symptoms. She explained the claimant experienced agoraphobia, which resulted in anxiety and distress when leaving her home, and often required a

companion to leave her home. She opined the claimant was unable to function in a work, academic, or social environment, and unable to complete tasks of daily living or manage any responsibilities that would allow her independence from her parents. She opined the claimant was unable to complete activities of daily living necessary to achieve independence and complete tasks related to employment. (9F) She submitted the same statement in October 2019. (15F) The undersigned did not find Dr. Arnett's opinions persuasive because medical evidence did not support the extreme degree of limitations outlined in her opinions. For example, Dr. Arnett opined the claimant was unable to complete activities of daily living that would allow independence, which evidence did not support, because the claimant reported being able to tend to personal care independently, prepare **simple meals, shop online**, and ask for car rides from her parents. Additionally, intelligence testing showed the claimant functioned in an average range of intelligence, and treatment records showed that the claimant's anxiety, depression, and social functioning improved with consistent mental health treatment including medication management. (13F; 14F) This evidence indicated the claimant was able to function at a level of unskilled work consistent with the residual functional capacity.

R. 26.[4] (emphasis added).

Notably, it appears that the evidence the ALJ cites to regarding the Claimant's reported abilities predates the amended date. Earlier in the decision, the ALJ examined the Claimant's testimony regarding daily living activities and discussed Claimant's function report, in which it is stated that Claimant can make simple meals and shop online. R. 24, citing Ex. 6E, 19F. That function report is dated April 11, 2017. R. 244. So, while Dr. Arnett's opinion is from January 2018, it seems the ALJ's persuasiveness determination is based partially on pre-onset record evidence. If the Court examines the record as it relates to "supportability," as Claimant requests, then the Court must consider that pre-onset date evidence under the appropriate standard, something that the ALJ did not do.

To illustrate the Court's concern by way of a hypothetical, if the ALJ applied the correct date it is possible that he may have discounted the function report since it predates the amended

_____

[4] Separately, the ALJ considered Dr. Arnett's February 2020 opinion which Claimant challenges as well. R. 27.

alleged onset date and, therefore, decided that there was more support in the record for Dr. Arnett's opinion.  In other words, the ALJ may have determined that the function report was not sufficiently proximate and relevant to the alleged onset date to warrant using that report as a basis to discount Dr. Arnett's opinion.  While this result may appear unlikely because the function report precedes the amended onset date by only a few months, the Court will not guess what the ALJ's decision would have been had he applied the correct onset date.

Further, as part of Claimant's assignment of error regarding the treatment of Dr. Arnett's opinions, Claimant includes a lengthy discussion of Dr. Scott Kaplan's record.  According to the Joint Memorandum, in July 2017, the state agency hired Dr. Kaplan, a psychologist, to perform a consultative examination.  Claimant states that "[t]he ALJ found that Dr. Kaplan's July 2017 opinion that Plaintiff had a marked impairment adapting to changes and getting along in social settings was unpersuasive because 'Dr. Kaplan reported that the claimant was fully oriented and able to participate in the exam successfully.'"  Doc. 30 at 20, citing R. 25.

Claimant argues that "the ALJ provides no medical opinion to support the finding that being 'fully oriented' and 'able to participate in the exam successfully' is somehow inconsistent with Dr. Kaplan's opinion that [Claimant] has a marked impairment adapting to changes and getting along in social settings."  Doc. 30 at 21.  Claimant concludes that "[a]pparently, this is just based on the ALJ's opinion and not substantial evidence" and asserts that an ALJ cannot substitute his judgment for that of a medical expert.  *Id*.  Claimant argues further that the ALJ misstated the record regarding Dr. Kaplan's July 2017 report and "clearly failed to adequately evaluate the supportability of Dr. Kaplan's opinions of July 2017 and July 2018."  *Id*. at 21, 23.

As such, Claimant calls on the Court to evaluate the ALJ's analysis of Dr. Kaplan's opinion (which predates the amended alleged onset date) and how that opinion compares to the July 2018

opinion (which comes after the alleged onset date).  Again, the ALJ did not address the July 2017

opinion with respect to proximity and relevancy, and perhaps the ALJ would have drawn different

conclusions if he had.  The Court cannot evaluate Claimant's arguments surrounding that Dr.

Kaplan's opinion when the ALJ did not address the fact that it predated the alleged onset date.

Moreover, as noted in the Court's February 28, 2022 Order, in determining the RFC, the

ALJ discussed records from September 2015, August 2016, and January 2017, and Dr. Vara's

consultative exam from August 16, 2017.  R. 22-23.  It is unclear if consideration of those records

was a factor in the determination that: "[the ALJ] did not find Dr. Arnett's opinions persuasive

because medical evidence did not support the extreme degree of limitations outlined in her

opinions."  As the excerpt reflects, to support this finding, the ALJ only gave examples regarding

daily living and the intelligence testing.  R. 26.  There is no indication whether the other "medical

evidence" predated the amended alleged onset date, and it does not seem harmless that the ALJ

failed to include this information in the analysis.

Finally, as the Court noted at the hearing, the ALJ applied the original alleged onset date

and made specific findings with that date as the relevant parameter throughout the sequential

evaluation process.  *See* R. 15, 17, 29.  The Commissioner has not sufficiently persuaded the Court

that the application of the wrong date—which is approximately 18 years before the amended

date—did not infect the ALJ's entire analysis.

In sum, the ALJ is required to build a logical bridge between the evidence and his decision

that enables a meaningful review by the Court.  *See Hanna v. Astrue*, 395 F. App'x 634, 636 (11th

Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct

meaningful review") (citation omitted); *Flentroy-Tennant*, 2008 WL 876961, *8 ("An ALJ is

required to build an accurate and logical bridge from the evidence to his or her conclusion.") (citation omitted).

The ALJ did not do so here, and the Court will not and cannot reweigh the evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (stating that the district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'") (quotation omitted).

To be clear, the Court does not find that every application of an incorrect onset date justifies remand, but Claimant's assignment of error is so intertwined with the ALJ's analysis of the pre-onset date records that a meaningful review is not possible.

## IV.    Conclusion

Accordingly, it is **ORDERED** that:

1.  The final decision of the Commissioner is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of § 405(g) for the above stated reasons; and

2.  The Clerk is directed to enter judgment in favor of Claimant and to close the case.

**DONE AND ORDERED** in Orlando, Florida on March 31, 2022.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 10 -